**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

LAWRENCE J. WALTER,

                          Plaintiff,

      v.                                   No. 08-CV-908
                                         (NAM/DRH)

BRIAN FISCHER, Commissioner,
Department of Correctional Services; JOHN
H. NUTALL, Deputy Commissioner for
Program Services; DWIGHT BRADFORD,
Director of Substance Abuse; and S.
SPURGEON, Senior Corrections Counselor,

                          Defendants.
_____

**APPEARANCES:**                    **OF COUNSEL:**

LAWRENCE J. WALTER
Plaintiff Pro Se
01-B-2188
Marcy Correctional Facility
Post Office Box 3600
Marcy, New York 13403

HON. ANDREW M. CUOMO        MICHAEL G. McCARTIN, ESQ.
Attorney General for the             Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Lawrence J. Walter ("Walter"), an inmate currently in the custody of the

_____

    [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, four DOCS employees, violated his constitutional rights under the Fifth and Fourteenth Amendments challenging DOCS requirement that he participate in an alcohol abuse treatment program.  Compl. (Docket No. 1).  Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 19.  Walter opposes the motion.  Docket No. 21.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related herein in the light most favorable to Walter as the non-moving party.  See subsection II(A) infra.

On September 25, 2001, Walter was sentenced to twelve years in prison pursuant to his guilty plea to child abuse and molestation.  Compl. ¶¶ 7-8.  Prior to his plea, the probation department completed a pre-sentence investigation detailing Walter's history which included a guilty plea for driving while under the influence on October 1, 1991 and a self-admitted diagnosis of alcoholism "between the ages of 18 and 41 [with a] completed inpatient treatment at the Marcy Alcoholic Treatment Center . . . in 1982-83."  Docket No. 1-2 at 5, 10,[2] 11.  Walter also reported that "he ha[d] not consumed any type of alcoholic beverages since 1991."  Docket No. 1-2 at 10, 11.

Walter arrived at Elmira Correctional Facility on October 5, 2001.  Compl. ¶ 8.  Walter

---

[2]Walter attaches various documents to his complaint.  Those documents may be considered on a motion under Rule 12(b)(6).  See Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008); Newman & Schwartz v. Asplundh Cortec Indus., Inc. v. Sun Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

was given a battery of tests upon arrival, including the Michigan Alcoholism Screening Test ("MAST").  Id.[3]  Walter then met with a corrections counselor who instructed him that he need only complete Anger Regression Training ("ART") and the Sexual Offenders Program ("SOP") prior to his release from incarceration.  Id.  Walter was no then advised that he also needed to complete an alcohol abuse treatment program.

On September 27, 2002, Walter was transferred to Attica Correctional Facility.  Compl. ¶ 9.  Walter again met with a corrections counselor who indicated that Walter need only take ART and SOP prior to his release.  Id.  Walter continued to meet with this counselor on a quarterly basis through November 5, 2005.  Id.  ¶ 10.  Walter's counselor never indicate that Walter was required to participate in any additional programs or specifically in the Alcohol and Substance Abuse Treatment ("ASAT").  Id.

On November 5, 2005, Walter was transferred to Livingston Correctional Facility.  Compl. ¶ 11.  During his intake interview, Walter was informed for the first time of the requirement that he participate in ASAT as well as in ART and SOP.  Id.  On June 12, 2006, Walter was transferred to Oneida Correctional Facility and was again told that he was required to complete all three programs prior to his release.  Id. ¶ 12.  Walter disagreed with the added requirement that he complete the ASAT program, so his counselor suggested he "write Albany about getting the determination changed . . . ."  Id.

On February 8, 2007, Walter wrote to defendant Nuttall, the DOCS Deputy Commissioner for Program Services.  Compl. ¶ 13; see also Docket No. 1-2 at 13-14.  On

———————————————

[3] "The MAST is one of the most widely used measures for assessing alcohol abuse . . . to provide a rapid and effective screening for lifetime alcohol-related problems and alcoholism."  Docket No. 1-2 at 37.

March 6, 2007, Nuttall responded that substance abuse treatment referrals were based upon global criteria and "[a]s [Walter's] history includes alcohol use, the need for treatment is appropriate."  Docket No. 1-2 at 16.  On March 14, 2007, Walter wrote another letter seeking an explanation why he was required to participate in ASAT.  Docket No. 1-2 at 17-18.  On March 26, 2007, Walter received a response from defendant Spurgeon, a DOCS senior Corrections Counselor, stating that from Walter's answers on the MAST, "[his] score [wa]s indicative of a person in need of Alcohol therapy."  Docket No. 1-2 at 19.  The response also indicated that Walter was first advised of this requirement while he was incarcerated at Attica in September 2002, and was reminded in every quarterly meeting thereafter.  Id.

Walter continued to correspond with various DOCS officials about the ASAT requirement.[4]  In early April 2007, Walter met with a corrections counselor who informed Walter that his MAST score was "somewhere around twenty-five" and "that a . . . score requiring the [ASAT] program was five or above."  Compl. ¶ 18; see also Docket No. 1-2 at 30 (summarizing April meeting with corrections counselor stating that ASAT recommendation was based solely on MAST test score which, given Walter's answers, was considered a "self-admission" to dependance on alcohol).  This explanation was confirmed on July 20, 2007 in a letter response sent to Walter from defendant Bradford, the DOCS Director of Substance Abuse, which stated that:

> program and therapeutic needs are determined by evaluating the entire case
> history of the individual.  Your records indicate a score of 29 on the [MAST],
> which is indicative of alcoholism, as well as a DWAI conviction in 1991.  While

---

[4] Walter emphasizes that he is "not refusing to do the ASAT program, but [just] questioning the need for [him] to take it."  Docket No. 1-2 at 18.

4

> it is noted that you report your last use of alcohol to be September 15, 1991,
> you have never satisfied a Department-approved substance abuse treatment
> program.  As such, your assessed substance abuse treatment need is correct.

Docket No. 1-2 at 32.  Walter does not contest his MAST score but contends that by

answering the questions posed truthfully, he was unfairly guaranteed the label of an

alcoholic despite his previous treatment through DMV and a decade of abstinence.


## II.  Discussion

In his complaint, Walter alleges that defendants violated his due process rights by (1)

violating their own policy of requiring only those treatment programs associated with the

reasons for incarceration, (2) requiring Walter to take an unnecessary treatment program

that will result in the unconstitutional deprivation of good time credits if he refuses to

comply, and (3) implementing the requirement without providing Walter with a hearing.

Additionally, Walter contends that defendants have violated his equal protection rights by

requiring inmates to participate in ASAT even though previously treated.  Defendants move

to dismiss on the grounds that (1) Walter has failed to allege the personal involvement of

defendant Fischer, (2) there is no federal relief for violations of  state law, (3) the ASAT

regulations are unconstitutional, (4) Walter lacks standing to raise his claims as he has

suffered no injury, and (5) defendants are entitled to qualified immunity.


### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When

considering a motion to dismiss, "a court must accept the allegations contained in the

complaint as true, and draw all reasonable inferences in favor of the non-movant."

Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, a complaint containing

conclusory allegations without factual support fails to meet even the liberal standard of Rule

12(b)(6).  De Jesus v. Sears, Roebuck & Co. 87 F.3d 65, 70 (2d Cir. 1996).  Thus, dismissal

is only warranted if it appears, beyond a reasonable doubt, that the non-moving party

cannot prove a set of facts which would support his or her claim or entitle him or her to

relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186

F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled
> to "special solicitude," . . . that a pro se litigant's submissions must be
> construed "liberally,". . . and that such submissions must be read to raise the
> strongest arguments that they 'suggest. . . . .  At the same time, our cases
> have also indicated that we cannot read into pro se submissions claims that
> are not "consistent" with the pro se litigant's allegations, . . or arguments that
> the submissions themselves do not "suggest, . . ." that we should not "excuse
> frivolous or vexatious filings by pro se litigants" . . . and that pro se status
> "does not exempt a party from compliance with relevant rules of procedural
> and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537

F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded

district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his

pleadings liberally.'" (citations omitted)).

6

**B. Personal Involvement**

Defendants contend that Walter has failed to establish that Fischer, the DOCS Commissioner, was personally involved in any of the alleged constitutional deprivations.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Fischer has been named as a defendant in his supervisory capacity.  Compl. ¶ 45. However, a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement.  Wright, 21 F.3d at 501. Thus, Fischer cannot be held liable solely because he held a supervisory position.  Additionally, there are no

7

allegations, nor does the record support the conclusion that Fischer was directly involved with the alleged constitutional violations.  Moreover, there are no allegations that Fischer created an unconstitutional policy or custom or was grossly negligent in supervising his subordinates.

Accordingly, defendants' motion on this ground should be granted and Fischer dismissed from the action.


### C. Fourteenth Amendment

### i. Substantive Due Process

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property.  See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir.2001).  To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  This standard requires a prisoner to establish that the confinement or condition was atypical and significant in relation to ordinary prison life.  See Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996).

Walter contends that defendants failed to establish that he needed an ASAT program until over four years into his incarceration and against DOCS own directives since alcohol was not involved in his underlying crime.  First, the violation of a state procedural right does not automatically confer a federal right to due process upon Walter.  See generally Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990) ("The fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse

official action does not settle what protection the federal due process clause requires.")

(internal quotation marks and citations omitted).  Thus, simply because DOCS has instituted

a protocol for including particular programs in an inmate's treatment plan does not afford an

inmate a cognizable right to enforce that protocol.  Moreover, Walter misstates the DOCS

policy.  Contrary to his contentions,

> It is the policy of the Department of Correctional Services to
> recommend [ASAT] programming for <u>all</u> inmates with a history of
> alcohol or drug abuse. Although previous policy informally
> exempted inmates who demonstrated a period of abstinence of 10
> years or more, the current policy provides no such relief because of
> evidence that individuals with a history of drug or alcohol abuse can
> readily relapse even after many years of abstinence.

<u>Rodriguez v. Goord</u>, 50 A.D.3d 1328, 1328 (3d Dep't 2008) (emphasis added); <u>see also</u>

<u>Gomez v. Goord</u>, 34 A.D.3d 963, 964 (3d Dep't 2006) (explaining that the ASAT program

gives staff "the authority to refer inmates . . . based on institutional records or self-reports

indicating alcohol . . . abuse," and deferring to DOCS' "considerable discretion in

determining the program needs of inmates . . . .").  As indicated, DOCS policy allows and

encourages referral of any inmate with a history of substance abuse to undergo treatment

while incarcerated.  Walter's criminal and personal history, independent of the MAST

scores, made him a candidate for the program under DOCS guidelines.  Thus, while Walter

has no cognizable federal right to assert a state procedural infringement, it is of no matter

because Walter it is beyond question that under DOCS POLICY, Walter was appropriately

assigned into the program.

   Moreover, Walter contends that his previous treatment made him an inappropriate

candidate for ASAT regardless of the MAST test and his own self-reported history.  Walter

contends that given these facts, compelled treatment constitutes a due process deprivation.

9

However, the Supreme Court has held that "[a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not . . . constitute [an] atypical and significant hardship [ ] in relation to the ordinary incidents of prison life." McKune v. Lile, 536 U.S. 24, 37-38 (2002). "Since 'most offenders will eventually return to society, [a] paramount objective of the corrections system is the rehabilitation of those committed to its custody.' " Id. at 36 (quoting Pell v. Procunier, 417 U.S. 817, 823 (1974)). Additionally, as stated above, it remains a fact of recovery that individuals will relapse, even after many years of sobriety, upon their return to society from incarceration. Further treatment will only facilitate the goal of reintegrating inmates back into the community with the tools to continue sobriety. Thus, Walter has failed to allege a protected liberty interest regarding his recommendation to participate in the ASAT program.

Walter also appears to contend that the four-year delay by DOCS in advising him that he must complete ASAT before his release violated his right to due process. However, due process does not require prison officials to advise an inmate of all programs he may be required to complete upon the inmate's entry into the prison system or be barred from requiring such programs. Even with the four-year delay, Walter still had years to complete the ASAT program before completing his sentence of imprisonment. Thus, his claimed due process violation based upon delayed notice lacks any foundation.

Finally, Walker contends that refusal to participate in ASAT will result in the denial of good time credits in contravention of his due process rights. To assert a claim for a violation of due process, an inmate must demonstrate that he or she has suffered a deprivation which is "concrete and particularized, and actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation

marks and citations omitted).  Walter asserts that, while he will not refuse to participate in

the program, a refusal would result in a denial of good time credits.  Compl. ¶ 15; Docket

No. 1-2 at 18.  While the loss of good time credits would occur if Walter refused to

participate, no actual deprivation occurs until Walter does so.[5]  Walter's repeated use of "if"

in his complaint underscores the hypothetical and contingent nature of his claims.  Compl. ¶

15; Docket No. 1-2 at 18.  Walter has not yet actually suffered any deprivation and will not if

he opts to complete ASAT.  McKune, 536 U.S. at 38 (dismissing due process claims

regarding compulsory substance abuse treatment because "his decision [did not] affect his

eligibility for good-time credits or parole.") (citations omitted).  Thus, Walter's allegations,

taken as true, fail to establish his standing to assert these claims.  Therefore, this issue not

ripe for review as no deprivation has yet occurred.

Accordingly, it is recommended that defendants' motion on this ground be granted.


### ii. Procedural Due Process

"Procedural due process claims concern the adequacy of the procedures provided by

the governmental body for the protection of liberty or property rights of an individual."

Gordon v. Nicoletti, 84 F. Supp. 2d 304, 308 (D. Conn. 2000).  However, to state a claim for

procedural due process, there must first be a substantive due process interest which

requires protection.  See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994)

---

[5] Walter relies on a memorandum from August 10, 1998 which states that "good time is to be taken whenever it can be documented that an inmate refused to participate in recommended Sex Offender Programs."  Docket No. 1-2 at 15.  The document makes no reference to refusal to participate in the ASAT program.  Id.  Nevertheless, Walter alleges that such a failure would result in the loss of good time credit and that allegation must be accepted as true at this stage for purposes of defendants' motion.

("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing <u>Kentucky Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 460 (1989)).  As previously stated, there is no liberty interest permitting refusal to participate in the ASAT program based on his history of drug abuse.  Additionally, any arguable liberty interest in good time credits Walter possesses has not been interfered with by defendants because Walter has neither refused to participate in the program nor suffered a loss of any good time credits.

Accordingly, it is recommended that defendants' motion on this ground be granted

### iii. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  In order to establish an equal protection violation, the plaintiff must show that "the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests."  <u>Phillips v. Girdich</u>, 408 F.3d 124, 129 (2d Cir. 2005).

In his claim, Walter alleges that his history as a substance abuser resulted in treatment different from that received by other inmates with other past illnesses like "broken bones, kidney stones, or even cancer."  Compl. ¶ 40.

A rational basis exists, however, for treating inmates with histories of addiction with

those with histories of other medical conditions.   The treatment for addiction is principally behavior modification throough programs such as Alcoholics Anonymous, Narcotics Anonymous, and ASAT.  The principal treatment for the medical conditions cited by Walter is medication, surgery, and other medical remedies.  Thus, the treatment for addiction is similar to that for those with histories of sex abuse, a group within DOCS custody which is treated similarly to those with histories of addiction and for the same reasons.

Walter also contends that inmates such as he who are mandated to participate in ASAT because of the possibility that they may relapse are treated differently from other inmates without a history of addiction but who also may become substance abusers.  Thus, Walter contends that it violates the Equal Protection Clause to require inmates with histories of addiction to participate in ASAT where inmates without that history are not.  Again, the different treatment here is supported by a rational basis that those with histories of addiction face a greater likelihood of relapse than do those without that history.  ASAT serves to deter such relapse.

Accordingly, because a rational basis exists for the differences in treatment challenged here by Walter, defendants' motion as to Walter's equal protection claim should be granted.


### 3. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov.

10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Walter's allegations as true, he has not shown that any of defendants violated his constitutional rights.

Accordingly, it is recommended in the alternative that defendants' motion on this ground be granted.


### III. In Forma Pauperis

Walter has recently moved to proceed in forma pauperis.  Docket No. 25.  If the disposition of defendants' motion recommended herein is accepted by the district court, Walter's motion will be moot and that motion has no affect on this case unless defendants' motion to dismiss is denied.  Accordingly, Walter's motion is denied without prejudice to renewal if the district court denies defendants' motion to dismiss.

## IV.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Docket No. 19) be **GRANTED** and that the complaint be dismissed in its entirety as to all claims and all defendants; and

**IT IS ORDERED** that Walter's request for leave to proceed in forma pauperis (Docket No.  25) is **DENIED** without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  July 28, 2009
      Albany, New York

_David R. Homer_
United States Magistrate Judge

15